UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**ERIC SNOWDEN,**

        **Plaintiff,**

        v.                                Case No. 25-C-214

**TRANSUNION, LLC and
CAPITAL ONE N.A.,**

        **Defendants.**

### ORDER DENYING TRANSUNION'S
### MOTION FOR JUDGMENT ON THE PLEADINGS

On February 12, 2025, Plaintiff Eric Snowden brought this action against Defendants Experian Information Solutions, Inc.; TransUnion, LLC; and Capital One N.A. (CONA), alleging various violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* Experian and Plaintiff settled, so Plaintiff voluntarily dismissed it from the case, leaving TransUnion and CONA. Presently before the court is TransUnion's motion for judgment on the pleadings. The court held a telephone status conference on July 8, 2025, wherein the parties offered clarification and argument. The court invited the parties to file any supplemental authority that may be relevant, but to date, the parties have not made any subsequent filings. Accordingly, the court considers TransUnion's motion ripe for adjudication. For the following reasons, TransUnion's motion will be denied.

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ.

P. 12(c). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) (citing *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Thus, the court draws all reasonable inferences and views all facts in the light most favorable to the plaintiff. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). But it is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). To survive a motion for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The general rule is that matters outside the pleadings may not be considered by the court in deciding a motion to dismiss or for judgment on the pleadings unless the motion is treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). An exception to this rule exists, however, for documents that a plaintiff fails to attach to the complaint, but which are referred to in the plaintiff's complaint and are central to his claim. *See Wright v. Associated Ins. Co., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (noting that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.").

## ALLEGATIONS OF THE COMPLAINT

The complaint begins with a general background of the credit industry. It alleges that individuals nationwide borrow money from creditors daily. To determine who gets credit and on what terms, creditors often rely on FICO scores, which are three-digit numbers that reflect a consumer's credit risk and likelihood of repaying a loan. Compl. ¶¶ 17–19, Dkt. No. 1. The

2

creation of a consumer's FICO score is the result of a process. First, a credit reporting agency (CRA), one of the largest of which is TransUnion, must obtain credit data from a Data Furnisher (CONA, here). The CRA then uses that data to create a credit report under the Metro 2 format—a standardized reporting format developed by the Consumer Data Industry Association. *Id.* ¶¶ 34–35. FICO scores are then calculated by running the data contained in credit reports through algorithms that weigh five key factors: payment history, amount of debt, length of credit history, new credit, and credit mix. *Id.* ¶ 25.

As for the specific facts upon which Plaintiff's claims are based, the complaint alleges that Plaintiff filed for Chapter 7 bankruptcy protection on February 19, 2024, in order to reorganize his finances and improve his credit worthiness. *Id.* ¶ 57. On May 30, 2024, Plaintiff received a general discharge. *Id.* ¶ 58. Not included in the discharge, however, was Plaintiff's auto loan as he reaffirmed it with CONA. *Id.* ¶¶ 59–60. After completion of bankruptcy proceedings, Plaintiff ordered credit reports from Experian, Equifax, and TransUnion. *Id.* ¶ 61. Upon review of those reports, Plaintiff believed that the information concerning his auto loan was inaccurate, incomplete, or misleading. *Id.* ¶ 62. Plaintiff alleges that CONA did not update the payment history on the account to show that he was timely making his vehicle payments. *Id.* ¶ 70. Of the five factors used to calculate credit worthiness, payment history is weighed most heavily, according to the complaint. *Id.* ¶¶ 25–28. To remedy the problem, Plaintiff disputed "the inaccurate CONA tradeline via certified mail with Experian, Equifax, and Trans Union in July of 2024" in which he specifically put CONA on notice that Plaintiff's account was open, current, and not past-due and included a history of current and timely payments made to CONA. *Id.* ¶¶ 63–65.

"In October 2024," the complaint continues, "after the statutory time period had passed for Plaintiff to receive a reinvestigation report from the credit reporting agencies, Plaintiff ordered

a second credit report from Experian, Equifax, and TransUnion for the sole purpose of ensuring Plaintiff's account with CONA had been properly updated." *Id.* ¶ 67. The complaint alleges "the CONA account on Plaintiff's Experian and TransUnion reports still contained inaccurate and misleading information." *Id.* ¶ 68. The complaint alleges that CONA "did not update the payment history on the account to indicate that Plaintiff was timely making his vehicle payments." *Id.* ¶ 70. The complaint continues, "CONA's reporting of the incomplete payment history for Plaintiff's auto loan is inaccurate because Plaintiff did not discharge his auto loan in his bankruptcy filing and continued to make direct payments on the account both during the pendency of his bankruptcy and after it was completed." *Id.* ¶ 71. "As it stands," the complaint alleges, "it appears that Defendant CONA failed to report Plaintiff's timely payments on the loan." *Id.* ¶ 76. The complaint alleges that "Plaintiff believes that Defendant CONA received a copy of Plaintiff's dispute and confirmed that the account payment history was accurate, despite not reporting a complete payment history," and further, that "CONA is aware that Plaintiff is making timely payments on the auto account yet is failing to provide verification to the credit reporting agencies that the account is current with a complete and accurate payment history." *Id.* ¶¶ 77–78.

Based upon these allegations, the complaint asserts four separate claims against TransUnion under the FCRA. The first claim is that TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy of its reports so as to prevent CONA from providing such misleading account information. *Id.* ¶¶ 88–90. The second claim is that TransUnion violated 15 U.S.C. § 1681i(a)(1) by failing to reasonably reinvestigate the disputed information after Plaintiff disputed the amounts. *Id.* ¶¶ 113–16. The third and fourth claims are derivatives of the second. The third claim is that TransUnion violated 25 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information Plaintiff

4

submitted, and the fourth is that TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to delete the disputed and inaccurate information. *Id.* ¶¶ 125–30, 131–36.

## ANALYSIS

### A. Standing

At the outset, the court is required to assure itself that it has subject-matter jurisdiction over this action, but consideration of that issue will be brief. Federal courts are limited to deciding "cases" or "controversies," so plaintiffs seeking to litigate before them must have standing to do so. U.S. Const. art. III, § 2, cl. 1; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement.'" *Gracia v. SigmaTron Int'l Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)). In its reply brief, as well as during the July 8, 2025 telephone status conference, TransUnion suggested that Plaintiff does not have standing because he has not alleged a concrete harm as required under the injury-in-fact requirement. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." (citation modified)). The court is required to assure itself of standing regardless of whether the issue has been raised by the parties. *Steel Co.*, 523 U.S. at 94.

In support of its argument challenging Plaintiff's standing, TransUnion relies on *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021), wherein the Supreme Court held that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." Thus, absent dissemination of the report to third parties, there is no harm. But Plaintiff has alleged that his "fresh start has been irreparably harmed and continues to

be harmed by the reporting of CONA's tradeline as that reporting has been disclosed and disseminated to various third-party lenders." Compl. ¶ 85. The court is thus satisfied that Plaintiff has alleged facts sufficient to show standing as he has alleged a concrete harm in light of *TransUnion LLC v. Ramirez* and turns now to the merits.

**B. Merits**

Section 1681e(b) of the FCRA requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i of the FCRA requires that upon notice that a consumer disputes the completeness or accuracy of any item of information reported, the consumer reporting agency must conduct a reasonable investigation to determine whether the information is accurate and either report the current status of the information or delete the item from the consumer's file. 15 U.S.C. § 1681i(a)(1)(A). To prevail on either claim, a plaintiff must demonstrate an inaccuracy in TransUnion's reporting. *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021) ("A threshold requirement for claims under both sections [1681e(b) and 1681i(a)(1)(A)] is that there must be an inaccuracy in the consumer's credit report.").

The complaint alleges that an entry on Plaintiff's post-bankruptcy credit report "contained inaccurate, misleading, and incomplete information regarding Plaintiff's CONA account." Compl. ¶ 62. More specifically, the complaint alleges "it appears that Defendant CONA failed to report Plaintiff's timely payments on the loan." *Id.* ¶ 76. Plaintiff further alleges that "CONA is aware that Plaintiff is making timely payments on the auto account yet is failing to provide verification to the credit reporting agencies that the account is current with a complete and accurate payment history." *Id.* ¶ 78.

TransUnion argues that it cannot be liable under the FCRA for reporting information that is accurate and that, contrary to Plaintiff's allegations, the information it reported was accurate. TransUnion contends that it did not report Plaintiff's CONA account "as past-due," but instead entered the notation "data unavailable" in the monthly payment grid. Read as a whole, TransUnion notes that the tradeline makes it clear that Plaintiff's CONA account "was satisfactory and paid on time." Dkt. No. 22-1 at 1–2. In support of its argument, TransUnion cites to the report of its investigation in response to Plaintiff's letter disputing the information in his credit report, which it attached to its motion for judgment on the pleadings. Dkt. No. 22-2. A more complete copy of the report is attached to the authenticating declaration of Marianne Litwa, a Manager I of the Litigation Support Department of TransUnion's Consumer Operations Center, filed with TransUnion's Reply Brief. Dkt. No. 29-1. The report, which was issued September 18, 2024, shows that although no data was available in the payment history grid since January 2024, the account was reported as current, that Plaintiff paid or was paying "as agreed" with a balance of $29,491 as of September 17, 2024, and that the last payment received was September 6, 2024. *Id.* TransUnion argues that the fact that it did not have access to the more recent payment history does not make its failure to report that history inaccurate or misleading, especially given the fact that the report states the account is current and Plaintiff was paying as agreed.

Plaintiff offers two arguments in response. Plaintiff first argues that the court should not consider TransUnion's report of its investigation of the disputed item because it is outside the pleadings and thus cannot be considered in deciding a motion for judgment on the pleadings unless the court converts the motion to one for summary judgment under Fed. R. Civ. P. 12(d). Plaintiff's second argument is that even if the court does consider the report, TransUnion's motion should

7

still be denied because the report itself "raises factual issues not found in the case law cited by TransUnion in support of its motion." Dkt. No. 24 at 1.

Papers are considered part of the pleadings and therefore may be considered by the court on a motion for judgment on the pleadings "if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (quoting *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998)). "This is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment . . . ." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *see also Sartin v. Chula Vista, Inc.*, No. 18-CV-1890, 2019 WL 2746210, at *5 (E.D. Wis. July 1, 2019) (explaining that if "a defendant need simply answer the complaint, append to the answer whatever documents it wants, and then move for judgment on the pleadings," the result would be "a sort of abbreviated summary judgment procedure"). More broadly, the Seventh Circuit has warned that "[d]istrict courts should not allow motions for judgment on the pleadings to deprive the non-moving party of the opportunity to make its case." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (citing *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)).

At the same time, a plaintiff should not be allowed to subject a defendant to the expenditure of time and cost needed to complete discovery, prepare and file a motion for summary judgment, and perhaps even prepare for trial when it is clear at the outset that the case is fatally flawed. *See Twombly*, 550 U.S. at 557–59. This would seem especially true in an FCRA case. A plaintiff cannot avoid early dismissal of a fatally flawed case by hiding the ball, especially where the

8

allegations of the complaint fail to specify the allegedly inaccurate or misleading information that was included in the report.

In any event, the report is properly before the court. Contrary to Plaintiff's assertion, TransUnion's investigative response to his dispute letter was referred to in the complaint and is central to his claims. The complaint explicitly alleges that Plaintiff submitted a letter to TransUnion disputing the report on his CONA loan and that, following TransUnion's reinvestigation of the dispute, the information concerning the account remained inaccurate and misleading. Compl. ¶¶ 67–68. And it is TransUnion's report that the complaint alleges was inaccurate or misleading and which forms the basis of his claims that TransUnion failed to properly investigate, consider the relevant information submitted by Plaintiff, and failed to delete disputed and inaccurate information. For these reasons, the court will consider the report.

The question still remains, however, whether Plaintiff has stated a claim for relief against TransUnion which is plausible on its face even considering TransUnion's reinvestigation report. TransUnion focuses on the first element, arguing that Plaintiff has not alleged that it prepared any reports that contain inaccurate information and, thus, Plaintiff's claims against it must be dismissed. But "[a]n item on a credit report can be incomplete or inaccurate within the meaning of the FCRA because it is patently incorrect, or because it is 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Frazier v. Equifax Info. Servs., LLC*, 112 F.4th 451, 455 (7th Cir. 2024) (quoting *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 812 (7th Cir. 2023)). Plaintiff argues that due to missing and incomplete data, TransUnion's reports suggested that he had not made a payment on his auto loan since January 2024 when, in fact, he had always made timely payments. *See* Compl. ¶¶ 4–6, 62–65, 67. Moreover, because TransUnion understands that payment history is the most important factor in

9

determining a consumer's FICO score, its failure to correct this misleading information after Plaintiff brought it to TransUnion's attention and submitted documents to show his full payment history, according to the complaint, constitutes a violation of 15 U.S.C. § 1681i.

Taken as true, this is enough to allege that TransUnion prepared a report containing inaccurate information. In *Chaitoff*, the plaintiff alleged that Experian had violated the FCRA by omitting from his credit report the fact that he had entered into an agreement with his mortgage lender that allowed him to make lower payments and avoid foreclosure, and instead said he was delinquent for three months. 79 F.4th at 809–10. Although the statement that the plaintiff was three months delinquent was accurate, the court nevertheless reversed the district court's grant of summary judgment in favor of Experian because of its failure to mention the plaintiff's agreement with the mortgage holder in its report. In so ruling, the court held: "A credit report is inaccurate under § 1681e(b) and § 1681i(a) if it omits accurate information that could reasonably be expected to adversely affect a consumer's creditworthiness." *Id.* at 812.

Application of that same rule here requires that TransUnion's motion be denied. Plaintiff alleges that by omitting the complete payment history of his CONA account, TransUnion's report created the misleading impression that he was not making his payments when due. Plaintiff further alleges that as a result, his credit score has been "adversely impacted" and he has been "unable to rebuild his credit score and obtain favorable interest rates." Compl. ¶ 7. Because TransUnion does not contest any of the other elements of Plaintiff's claims, the court finds that Plaintiff's § 1681e(b) and § 1681i(a) claims survive. TransUnion's motion for judgment on the pleadings will therefore be denied.

## CONCLUSION

For the above reasons, TransUnion's motion for judgment on the pleadings (Dkt. No. 22) is **DENIED**. The Clerk is directed to put this matter on the court's calendar for a telephone scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 7th day of October, 2025.

William C. Griesbach
United States District Judge